**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| VALERIE JACKSON, | |
| Plaintiff, | Case No. 17-CV-05915 |
| v. | District Judge: Charles R. Norgle, Sr. |
| NATIONWIDE CREDIT & COLLECTION, INC., | Magistrate Judge: Sheila Finnegan |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

Defendant, NATIONWIDE CREDIT & COLLECTION, INC., (hereinafter, "Nationwide") by and through its attorneys, David M. Schultz and Brandon S. Stein of Hinshaw & Culbertson LLP, hereby submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). In support thereof, Nationwide states as follows:

### INTRODUCTION

Plaintiff's First Amended Complaint ("FAC") alleges a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692c(a)(2), and the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/9 based upon a single letter. Plaintiff's claims are simple: her attorneys sent a letter to Nationwide indicating that she was represented by counsel, but Nationwide later mailed a letter directly to Plaintiff. Several months after Plaintiff filed her Complaint and facing a Motion to Dismiss, she moved to amend to assert "additional violations." This new theory does not arise out of any new or subsequent conduct, but rather arises out of the same letter at issue in her original complaint that she received over a year prior to filing this lawsuit. Plaintiff's new theory is that Nationwide's same letter misstated and misrepresented the amounts of the debts Plaintiff owed.

1

Plaintiff's FAC should be dismissed for several reasons. First, the allegations and the letters attached to Plaintiff's FAC reveal that Plaintiff did not notify Nationwide, and thus Nationwide was not aware, that she was represented by counsel "with respect to" or "concerning" any specific debt. Second, to the extent the Court concludes that Plaintiff notified Nationwide that she was represented by Counsel on all debts, her letter would only apply to debts placed with Nationwide for collection at the time of that letter because a consumer may not notify a debt collector that she is represented by counsel with respect to future debts. Third, Plaintiff's new claim is defeated by simple math. Plaintiff's claim is that the initial communication sent on the two new debts that listed an amount owed of $1,348.00 was not correct. The back of the letter references two debts - one in the amount of $326.00 and the other $1,022.00 – that when added together, equal $1,348.00. Plaintiff's FAC should be dismissed with prejudice.

## SUMMARY OF THE ALLEGATIONS OF PLAINTIFF'S FAC

Plaintiff could not pay a debt that she owed to Cook County Health, and that Nationwide began collecting on an unidentified Cook County Health medical account associated with Plaintiff's Record ID. Dkt. #23, Plaintiff's FAC at ¶¶ 11-13. In response to collection attempts by Nationwide, Plaintiff consulted with lawyers at Community Lawyers Group who sent a letter to Nationwide on April 26, 2016. *Id.* at ¶ 14. Plaintiff claims that the letter disputed the unidentified Cook County Health account and communicated to Nationwide that all future communications regarding her record (identified by number 1000091205) should go to her attorneys. *Id.* Nationwide received this letter, but mailed an "initial communication" directly to Plaintiff on August 12, 2016. *Id.* at ¶ 15-16, 28, 41. Plaintiff no longer alleges that the letter "was attempting to collect for several dates of service associated with Plaintiff's RecordID." Dkt. #1, P. 4, ¶ 19. The letter stated an amount due of $1,348.00. Plaintiff's FAC at ¶ 24. Plaintiff claims that Nationwide "misstated" the amount of the alleged debt because the total amount of the debt was actually $1,952.02. *Id* at ¶25-26. Plaintiff

claims that on August 12, 2016, Nationwide knew that Plaintiff was represented by Counsel because it had received the April 26, 2016 letter from her attorneys stating that she was represented. *Id.* at ¶ 21. Plaintiff notably does not plead on which debt(s) Plaintiff's attorneys notified Nationwide that she was represented. *Id.* at ¶ 14.

Plaintiff claims that Nationwide communicated information regarding an alleged debt directly to a consumer while knowing the consumer was represented by an attorney, in violation of section § 1692c(a)(2) of the FDCPA. *Id.* at ¶ 23. Plaintiff claims that the same conduct also violated section 9 of the ICAA because Nationwide communicated with a debtor after being informed in writing by an attorney that Plaintiff was represented by an attorney "concerning the alleged debt." *Id.* at ¶ 36. Plaintiff lastly claims that Nationwide made a false, deceptive, and misleading misrepresentation and misstated the amount of the debt in violation of § 1692g(a)(1) and § 1692e through its "failure to combine the amounts due to its client" and by "arbitrarily splitting and reporting Plaintiff's alleged debt in multiple collection letters." *Id.* at ¶ 29, 34, 41-42. Plaintiff argues that Nationwide's "failure to combine the amounts due to its client is deceptive and confusing as a matter of law." *Id.* at ¶ 29.

## LEGAL STANDARD UNDER FED. R. CIV. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) states that a defendant may seek dismissal of a claim if the complaint "fails to state a claim upon which relief can be granted." Fed. R. Civ. P.12(b)(6). In deciding a motion to dismiss, the court accepts all well-pleaded facts as true and views them in the light most favorable to Plaintiff. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). When deciding a motion to dismiss, a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). A Complaint must always "allege enough facts to state a claim to relief that is plausible on its face.'" *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008).

A complaint must offer more than merely an "unadorned, the defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted)).

<div align="center">**ARGUMENT**</div>

## I. PLAINTIFF DID NOT NOTIFY NATIONWIDE THAT SHE WAS REPRESENTED BY AN ATTORNEY "WITH RESPECT TO" OR "CONCERNING" ANY DEBT, LET ALONE THE DEBTS AT ISSUE.

Plaintiff's FAC should be dismissed because the facts Plaintiff pleads in support of her theory, accepted as true, do not comply with the statutes that she brings her claims under. 15 U.S.C. § 1692c(a)(2) provides that a debt collector may not communicate with a consumer in connection with the collection of any debt if the debt collector knows that the consumer is represented by an attorney **"with respect to such debt"** (emphasis added). Similarly, section 9 of the ICAA outlaws communicating with a debtor when the collection agency is informed in writing by an attorney that the attorney represents the debtor **"concerning the debt"** (emphasis added). 225 ILCS 425/9(34). Plaintiff's claims under both the FDCPA and the ICAA fail for the same reasons, especially given that the language of the statutes are virtually identical and have the same practical meaning. Plaintiff's FAC and the exhibits attached thereto reveal that she never notified Nationwide that she was represented by an attorney with respect to or concerning any specific debt, let alone the debts which Nationwide's August 12, 2016 initial communication letter was sent regarding.

Plaintiff's Exhibit C, or the April 26, 2016 letter she sent to Nationwide, states that she is represented by Community Lawyers Group "regarding all matters in connection with the above referenced debt." Dkt. #1-1, P. 8. The "debt" Plaintiff refers to is "ACCOUNT #1000091205 (Cook County Health and Hospital Systems)." *Id.* Plaintiff's next exhibit, Exhibit D, reveals that

ACCOUNT #1000091205 is not an "account" that is associated with or identifies any "debt."[1] The letter shows that the Record ID is a Medical Record Number that identifies Ms. Jackson. *Id.;* Dkt. #15.

The actual "debts" are identified on the second page of the letter by their Nationwide Credit & Collection (NCC) file number, and account number. Dkt. #1-1, P. 11; Dkt. #15, P. 2. This is reinforced by the fact that each of those respective "debts" in the letter carried with them unique NCC File and Account numbers, admission dates, and balances on the second page. Plaintiff's allegations in her FAC also makes this clear, as Plaintiff pleaded that her April 26, 2016 letter sent to Nationwide indicated that Plaintiff was represented by an attorney "regarding her record, identified by number 1000091205." Dkt. #23, ¶14. Plaintiff then pleads that the alleged August 12, 2016 violation letter "conveyed information about the alleged debt, including an account number, the identity of the creditor, and an account balance." *Id.* at ¶ 17.

Plaintiff's April 26, 2016 letter does not inform Nationwide that she was represented by counsel "with respect to" or "concerning" any debt, let alone the debts referenced in the August 12, 2016 letter. *See Udell v. Kan. Counselors, Inc.*, 313 F.Supp.2d 1135, 1145 (D. Kan. 2004) (the attorney's letters "do not specify the accounts for which he was representing plaintiffs.") Plaintiff claims that on August 12, 2016, Nationwide knew that Plaintiff was represented by Counsel because it had received the April 26, 2016 letter from her attorneys stating that Plaintiff had acquired legal representation. *Id.* at ¶ 21. Yet, Plaintiff's allegations and exhibits beg the question: which debt(s) had she acquired legal representation on? Nationwide could not have been expected to know which "debts" of Plaintiff's many "debts" she was represented by an attorney on because Plaintiff's April

---

[1] Nationwide previously filed an Exhibit A to its first Motion to Dismiss which was the same letter that Plaintiff attaches to her FAC as Exhibit D, but in un-redacted form so the Court could consider the letter in its entirety. That letter was filed under seal as Docket Entry #15, which Nationwide incorporates herein by reference. Nationwide filed this exhibit under seal because it contained information protected by Fed. R. Civ. P. 5.2(a).

26, 2016 letter does not identify any specific debt(s). Plaintiff's FDCPA and ICAA claims fail and should be dismissed.

## II. PLAINTIFF CANNOT NOTIFY A DEBT COLLECTOR THAT SHE IS REPRESENTED BY AN ATTORNEY WITH RESPECT TO FUTURE DEBTS.

Plaintiff will presumably claim that her counsel's April 26, 2016 letter notified Nationwide that she was represented by an attorney with respect to all debts that Nationwide was collecting on associated with Plaintiff, or all debts associated with Cook County Health.[2] Plaintiff's argument would still fail because the debts that were the subject of the August 12, 2016 letter were *new* debts that had not been placed with Nationwide at the time of Plaintiff's April 26, 2016 attorney representation letter. Plaintiff had never been contacted on those debts at the time of the attorney representation letter, as the August 12, 2016 letter Plaintiff complains of is a dunning letter, the initial communication regarding those new debts.[3] Plaintiff's FAC admits that. Dkt. # 23, ¶28, 41. Therefore, Nationwide could not have been reasonably expected to know that Plaintiff was represented by an attorney with respect to these, at the time, future debts. Plaintiff's claims should be dismissed with prejudice.

### A. Even if Plaintiff's April 26, 2016 letter notified Nationwide that she was represented with respect to or concerning all debts, her claims still fail because the August 12, 2016 initial letter sought to collect new debts.

Plaintiff did not notify Nationwide that she was represented by an attorney with respect to or concerning the debts identified in the August 12, 2016 letter, because they were "other," or more aptly, "future" debts. *Graziano v. Harrison*, 950 F.2d 107 (3rd. Cir. 1991) lays out how the statute at

[2] Plaintiff now omits the allegation that conceded that the Attorney Representation letter did not identify a specific debt, or the allegation that the alleged violation letter "indicated it was attempting to collect for several dates of service associated with Plaintiff's Record ID." Dkt. #1, ¶ 19. The lack of that allegation is irrelevant as the Court can discern as much by reviewing Plaintiff's attorneys' refusal letter and its failure to identify a specific debt, as well as that the un-redacted letter was sent to collect two different new debts, one for $326 and one for $1,022.

[3] *See* 15 U.S.C. § 1692g(a) (setting forth the requirement that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall send a notice containing various information such as the amount of the debt, the name of the creditor to whom the debt is owed, and several statements about the consumer's rights to dispute the debt or request information about the debt or the original creditor). A dunning letter may serve as the initial communication itself. *See O'Connor v. Diversified Consultants, Inc.*, 2014 U.S. Dist. LEXIS 27990, *4 (E.D. Mo. March 5, 2014).

issue functions. In *Graziano*, the plaintiff retained counsel for the purpose of helping him to dispute an initial debt that the defendant tried to collect from him. *Id.* at 113. The defendant later communicated directly with the plaintiff concerning two additional debts. *Id.* The court concluded that the defendant did not violate § 1692c(a)(2) because at the time the defendant communicated with the plaintiff "concerning the two additional debts, Harrison had not been informed that Graziano was represented by counsel with respect to those debts." *Id.* The facts as plead here, even giving Plaintiff the benefit of the doubt, are in line with *Graziano*.

Courts within the Seventh Circuit have recognized *Graziano's* common sense interpretation of the plain language of the statute. *See Dore v. Five Lakes Agency, Inc.*, 2015 U.S. Dist. LEXIS 88338, *8 (N.D. Ill. July 8, 2015) ("1692c(a)(2) applies only where the debt collector knows the consumer is represented by an attorney **with respect to the specific debt being collected**" (emphasis added)); *Miller v. Allied Interstate, Inc.*, 2005 U.S. Dist. LEXIS 13121, *11 (N.D. Ill. June 27, 2005) ("1692c(a)(2) prohibits a debt collector from communicating directly with a consumer 'if the debt collector knows the consumer is represented by an attorney ***with respect to such debt***' (emphasis in original)); *Polster v. Van Ru Credit Corp.*, 2017 U.S. Dist. LEXIS 48806, *28-29 (N.D. Ill. March 31, 2017) (stating that "attorney representation in one capacity does not necessarily entail attorney representation in a separate, albeit related, capacity" and concluding that a debt collector could not have known that Plaintiff was represented on debt collection issues just because it knew Plaintiff was represented for her bankruptcy). Plaintiff's claims fail because her attorneys did not notify Nationwide that she was represented by counsel with respect to or concerning any specific debt, but more importantly the future debts that were the subject of the later sent August 12, 2016 initial communication letter sent on new, subsequently placed debts.

The logical outgrowth of the doctrine that a consumer must identify specific debts that she is represented by an attorney on is that a consumer cannot notify a debt collector she is represented by

an attorney with respect to future debts. Here, the debts at issue in the August 12, 2016 letter were future debts, as they had not been placed with Nationwide and thus Nationwide did not nor could not have sought to collect them from Plaintiff at the time of the April 26, 2016 attorney representation letter. This is made clear by the fact that the August 12, 2016 letter Plaintiff complains of was the initial communication, which Plaintiff admits. Dkt. #23, ¶ 28, 41. The letter was sent on new debts that were specifically identified on the second page of the letter. Dkt. #15. The letter identifies the amounts of the debts and the account numbers, as well as the dates of incurrence. *Id.*

*Udell v. Kan Counselors, Inc.*, 313 F.Supp. 2d 1135 (D. Kan. 2004) illustrates the principle on future debts and is accurately applied to this case. *Udell* cited *Graziano* for that Court's emphasis on the words "with respect to such debt" of §1692c(a)(2). *Id.* at 1144. The court went on to explain that because the plaintiff's attorney did not specify the accounts he was representing the plaintiff on, giving plaintiff the benefit of the doubt, at most it could have been inferred that the defendant knew plaintiff was represented with respect to accounts that were placed with the defendant on or before the date of the attorney representation letter. *Id.* at 1145. Since Plaintiff's letter here only identifies a RecordID, her letter can be analogized to the letter in *Udell*. Giving Plaintiff and her attorneys the benefit of the doubt, Nationwide can only be held to have assumed that she was represented with respect to all debts that it had attempted to collect from her on or prior to the April 26, 2016 attorney representation letter. *Udell* concluded that Plaintiff could not assert a § 1692c(a)(2) claim if the plaintiff or his attorneys never informed the defendant that plaintiff was represented by an attorney for those new debts. *Id.* at 1145-56. Here, Plaintiff's attorneys did not inform Nationwide that Plaintiff was represented by an attorney for the new debts because the attorney representation letter did not identify them, and could not have identified them as they were new debts not yet placed with Nationwide for collection at the time of that letter.

*Berndt v. Fairfield Resorts, Inc.*, 337 F.Supp.2d 1120 (W.D. Wi. 2004) is also on point. In *Berndt*, Judge Crabb explained that a debt collector violates 15 U.S.C. § 1692c(a)(2) if it communicates directly with a debtor after it knows that the debtor is represented by an attorney with respect to the debt in question. *Id.* at 1132. The Court explained that the plaintiffs were represented by an attorney with respect to a debt associated with the cancellation of their timeshare agreement, "but gave defendant no indication that they were represented with respect to the debt referred to in defendant's July and December 2003 letters." *Id.* at 1133. The communications the plaintiffs complained of were sent ***after*** the Defendant knew that Plaintiff was represented with regard to the other debt, and that the debt that was the subject of the subsequent letter was "distinct." *Id.* The Court accurately set forth how the defendant could not have been expected to know that plaintiffs were represented by an attorney after the issue with the first debt and the debts sought to be collected were not part of the first debt. *Id.* Like in *Berndt*, here the August 12, 2016 letter Plaintiff complains of was sent several months after Plaintiff's April 26, 2016 attorney representation letter, and was a dunning letter on new debts that had not been placed with Nationwide at the time of Plaintiff's April 26, 2016 attorney representation letter. Plaintiff's claims therefore fail.

**B. Common sense and sound public policy considerations support the law addressing attorney representation notices and future debts.**

The point of law addressing that a debt collector cannot be expected to know that a consumer is represented by an attorney on future debts has sound practical implications. Among them is that a debt collector cannot be reasonably expected to know that a consumer is represented by an attorney with respect to future debts that are not in the picture at the time they are notified that the consumer is represented by an attorney with respect to or concerning other debts. For all a debt collector knows, a consumer may decide not to retain counsel on future debts, or decide to fire their counsel and retain different counsel regarding the new debts. Both federal courts and the Federal Trade Commission have recognized these considerations. *See Masuda v. Thomas Richards &*

*Co.*, 759 F. Supp. 1456, 1464-65 (C.D. Cal. 1991) (citing the FTC Statements of General Policy or Interpretation; Staff Commentary on the [FDCPA] and explaining that the FTC recognized "that requiring a debt collector to know when an alleged debtor is represented by counsel with respect to future debts would place an 'unreasonable burden' on the debt collector."); *Bishop v. I.C. Sys.*, 713 F.Supp.2d 1361, 1366 (M.D. Fla. 2010) ("even after a debt collector receives a consumer's cease-and-desist letter, the FDCPA allows the debt collector to contact the consumer about *other* debts or *future* debts") (emphasis in original). Plaintiff's FAC should be dismissed with prejudice.

## III. NATIONWIDE DID NOT MISSTATE THE AMOUNT OF THE DEBTS THAT ITS LETTER WAS SEEKING TO COLLECT.

Plaintiff's new theory, an "additional violation" raised in response to a motion to dismiss but that arose out of the same letter that is the subject of the original complaint, should be dismissed. The new theory is based on inapt authority, does not reflect common sense, fails as a matter of law, and should be dismissed with prejudice.

As a threshold matter, a plain review of the letter attached to Plaintiff's FAC (filed unredacted under seal as Dkt. #15) reveals why Plaintiff's theory fails. Plaintiff alleges that the August 12, 2016 letter was an initial communication, or a "dunning" letter. *Id.* at ¶ 15-16, 28, 41. A "dunning letter" is the initial communication sent in connection with the collection of the debt that must set forth a series of information, including as applicable here, the amount of the debt. *See* § 1692g(a); *O'Connor*, 2014 U.S. Dist. LEXIS 27990 at *4. Nationwide's August 12, 2016 dunning letter was sent on two newly placed debts. Dkt. #15. The letter's reverse side shows the two different debts by their account numbers, dates of incurrence, and the balances for each debt. *Id.* Those two debts show their respective amounts of $326.00, and $1,022.00. *Id.* The front page of the letter shows an "Amount Due: $1,348.00." *Id.* When added together, the two debts that the August 12, 2016 letter was sent on, total $1,348.00. Plaintiff's theory is perplexing given that her own FAC alleges that "§

1692g(a)(1) places an affirmative obligation on the debt collector to state in its collection letters 'the amount of the debt' the debt collector is pursuing." Dkt. #32, ¶ 30. Only a "dimwit," which the unsophisticated consumer is not, would not understand that the letter was pursuing two debts, one for $326, and one for $1,022.00, which totaled $1,348.00. *Wahl v. Midland Credit Mgmt.*, 556 F.3d 643, 645 (7th Cir. 2009).

Plaintiff appears to be suggesting that there were other debts in play that resulted in her actually owing $1952.02. But the allegations in Plaintiff's FAC on this issue are "as vague as they come." *Beler v. Blatt, Hasenmiller, Leibsker & Moore,* LLC, 480 F.3d 470, 474 (7th Cir. 2007). Based on Defendant's best guess, Plaintiff is referring to $1952.02 being owed when other debts that were not the subject of Nationwide's dunning letter at issue are taken into consideration. This is based on Plaintiff's allegations, that come in the form of legal citations and not facts, that Nationwide should have combined all of the amounts Plaintiff owed, not just the newly placed debts that were the subject of the operative dunning letter. Dkt. #23 at ¶ 29. Plaintiff thinks that the dunning letter at issue arbitrarily split and reported Plaintiff's alleged debt in multiple collection letters. *Id.* at ¶ 34

The problem with Plaintiff's theory is that she is asking the court to hold Nationwide liable under the FDCPA no matter what it did with these new debts. Under Plaintiff's theory, Nationwide violated the FDCPA for dunning Plaintiff only with regards to the two specific newly placed debts. But if Nationwide were to have included all of the pre-existing debts in its dunning letter on these new debts, Plaintiff would have claimed that Nationwide confused her and misstated the amount of the debt by dunning her on debts that she had already been dunned on, and thus Nationwide would have overstated the amount of these two new debts. Or, Plaintiff apparently thinks that a dunning letter should not have been sent at all on these new debts. Plaintiff cannot have her cake and eat it too.

Plaintiff cites one case in support of her theory, *Rhone v. Medical Bus. Bureau, LLC,* 2017 U.S. Dist. LEXIS 177800 (N.D. Ill. Oct. 25, 2017). But Plaintiff misstates *Rhone. Rhone* addressed a Defendant that "reported nine separate tradelines on Rhone's credit report" "instead of reporting one tradeline." *Id.* at *2. Plaintiff certainly can acknowledge that having nine different debts reported on her credit report is a materially different scenario than receiving a letter on two newly placed debts. **Critically, Plaintiff's Counsel here, who represented the Plaintiff in *Rhone,* "never based her claims on statements regarding the amount of debt".** *Id.* at *4 (emphasis added). But now Plaintiff is making that claim and says *Rhone* supports her theory.

Plaintiff is likely latching on to *Rhone* because the defendant there did not combine nine different debts into one debt during its credit reporting. Plaintiff thus appears to be suggesting that Nationwide should have "combined" all of the debts that Plaintiff owed in its operative dunning letter on the two later placed debts with debts that she was previously dunned on. As mentioned, Plaintiff would then claim that she was confused for being dunned twice for some of the same debts or that Nationwide overstated the amount she owed on the new debts.

The facts from *Rhone* also are inapt. *Rhone* concluded that the amount owed was for nine debts that were all the same amount, $60. *Id.* at *3. The defendant in *Rhone* also had written to the plaintiff for all of those nine debts. *Id.* at *4. Here, at the time of Plaintiff's refusal letter, the debts that were the subject of the August 12, 2106 letter she now complains of had not yet been placed with Nationwide for collection. Judge Der-Yeghiayan even explained that "it would not have been improper for [defendant] to send a letter for each debt." *Id.* at *4. Nationwide did that here, and further, the debts were not of the same amount. Dkt. #15, P. 2. The Court recognized how Plaintiff wants to have it both ways, as it observed that "combining information concerning nine separate and distinct debts in one collection letter could result in consumer confusion and run afoul of the FDCPA." *Id. Rhone* actually undermines Plaintiff's theory.

*Smith v. Am. Revenue Corp.*, 2005 U.S. Dist. LEXIS 48680 (N.D. Ind. May 16. 2005) helps to further illustrate Judge Der-Yeghiayan's observation as to why Plaintiff would argue for an FDCPA violation no matter how Nationwide wrote to Plaintiff on the new debts. In *Smith*, the defendant sent a debtor a collection letter seeking payment for a total amount based on "various accounts." *Id.* at *6. Those accounts were fourteen different accounts owed to three different creditors. *Id.* Here, the letter was much more simple as it comprised two different accounts owed to the same creditor. Dkt. #15. *Smith* noted how the letter did not mention the accounts by name or the amounts owed on each of them. 2005 U.S. Dist. LEXIS 448680 at *8.

*Smith* becomes instructive when the Court examined previous letters sent by the same defendant that were not the subject of an alleged violation. Those letters placed on their reverse side "a corresponding table with columns for 'creditor,' 'account #,' 'service date,' 'patient name,' and 'balance.'" *Id.* at *9. Nationwide's August 12, 2016 letter specifically identifies the two debts it was sent in furtherance of by distinct file numbers, account numbers, admission dates, and the amount of the debts. Dkt. #15, P. 2. This is important because the Court's decision for imposing liability in *Smith* was based on the fact that the operative letter **did not** set "forth individual accounts, the account numbers, or the amounts owed for each account." *Id.* at *17-18. *Smith* actually concluded that the failure to itemize the various charges violated the FDCPA, where as to the contrary, breaking down the account information like Nationwide did "would likely meet the unsophisticated consumer standard under § 1692e." *Id.* at *24.

Plaintiff would claim that Nationwide violated the FDCPA whether Nationwide did as it did here and dunn her on new debts that were identified by specific account number and debt amount, or if Nationwide re-dunned her by including debts that she had been previously dunned on. Plaintiff's new theory is the classic example of an attorney "abus[ing]" the FDCPA by "us[ing]" debtors to allege and test the most minute violations of a concededly intricate statutory scheme."

*Shelley v. Ocwen Loan Servicing, LLC*, 2013 U.S. Dist. LEXIS 122439, *19 (S.D. Ind. Aug. 28, 2013) *citing Bailey v. Sec. Nat'l Servicing Corp*, 154 F.3d 384, 388 (7th Cir. 1998). Plaintiff's newly conjured up "additional violation" arising out of the same letter that her first complaint did should be dismissed with prejudice.

## CONCLUSION

WHEREFORE, Nationwide respectfully moves this Honorable Court to dismiss Plaintiff's FAC with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

<div style="margin-left:40%">

Respectfully submitted,

HINSHAW & CULBERTSON LLP

</div>

By:    */s/ Brandon S. Stein*
           Brandon S. Stein

David M. Schultz
Brandon S. Stein
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
dschultz@hinshawlaw.com
bstein@hinshawlaw.com

## CERTIFICATE OF SERVICE

I certify that on November 28, 2017 a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Brandon Stein*